IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| K.K-M., individually and as Kinship Legal Guardian of the minor children R.M. and A.W.<br><br>Plaintiff,<br>v.<br><br>NEW JERSEY DEPARTMENT OF EDUCATION, *et al.*,<br><br>Defendants. | Civil No. 17-11579 (RBK/KMW)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This action arises from a complaint (Doc. No. 20) filed by K.K-M. ("Plaintiff") alleging violations of numerous federal and state laws on the part of the New Jersey Department of Education ("NJDOE"), the New Jersey Office of Administrative Law ("NJOAL"), and Ms. Dominic Rota (collectively "N.J. Defendants") and the Gloucester City Public Schools ("GCPS," collectively with N.J. Defendants, "Defendants"). Because Plaintiff lacks standing to bring her claim due to the lack of a concrete and particularized harm that is actual or imminent, this Court lacks subject-matter jurisdiction. Therefore, Defendants' Motions to Dismiss (Doc. Nos. 27, 29) are **GRANTED**.

I.  BACKGROUND

In 2012, two minor children, R.M. and A.W., moved with their parents to Gloucester City, New Jersey, where they subsequently enrolled in GCPS. (Compl. at 5.) After several tumultuous years with their birth parents, R.M. and A.W. were placed with Plaintiff in September 2015. (*Id.* at 6.) In May 2017, Plaintiff was granted Kinship Legal Guardianship (KLG) status over the

1

children. (*Id.*) KLG status grants Plaintiff the "same rights, responsibilities and authority relating to [the children] as a birth parent[]." (*Id.* at 7.) Among the rights, responsibilities and authority granted to Plaintiff as the children's KLG is the "right to arrange and consent to educational plans for the child[ren]." (*Id.*) Plaintiff, unlike R.M. and A.W.'s birth parents, resides in Laurel Springs, New Jersey, which falls outside of GCPS's district boundaries. (N.J. Def. Mot. to Dismiss at 4.)

R.M. and A.W. each have a disability that qualifies them for special education and related services under the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. §§ 1400 *et seq.* (*Id.* at 2.) Since moving to GCPS in 2012, R.M. and A.W. have each had an Individualized Educational Program ("IEP") drafted pursuant to IDEA, designed to accommodate their respective disabilities and provide the proper educational supplements to ensure that they receive the same quality of education as a non-disabled child. (*Id.* at 8.)

On October 24, 2017, Plaintiff received an email from the superintendent of GCPS informing Plaintiff that the two children should enroll in the Laurel Springs School District, where they resided. (N.J. Def. Mot. to Dismiss at 4.) The superintendent recommended that the transition from GCPS to Laurel Springs School District occur at the end of the marking period. (Compl. at 8.) In response to this email notice, Plaintiff filed Requests for Due Process Hearings and Emergent Relief with the NJDOE Office of Special Education Policy ("OSEP") on November 12, 2017. (*Id.* at 9.) These initial filings were rejected by Ms. Rota, a docket clerk for OSEP, for failing to meet the substantive statutory requirements. (Compl. at 9.) *See also* N.J. Admin. Code § 6A:14. On November 14, 2017, Plaintiff responded by filing a Complaint and a Motion for a Temporary Restraining Order before this Court (Doc. No. 3), seeking to enjoin New Jersey Defendants from asserting or adjudicating a sufficiency challenge to Plaintiff's due process complaint, and enjoining GCPS from disenrolling, transferring, or removing R.M. or A.W. until the resolution of the due

2

process complaints. (N.J. Def. Mot. to Dismiss at 5.) This Court heard arguments and denied the request for a Temporary Restraining Order (Doc. No. 12) on November 16, 2017. (*Id.*) Plaintiff subsequently amended her Requests and submitted a second set, this time in compliance with the statutory requirements, on November 19, 2017. (*Id.*)

On December 13, 2017 GCPS and Plaintiff participated in a mediation session. (Compl. at 9.) No agreement was formed and the session terminated unsuccessfully. (*Id.*) The same day, the superintendent of GCPS sent Plaintiff a Preliminary Notice of Ineligibility, which notified Plaintiff that R.M. and A.W. failed to meet the eligibility requirements for attendance in GCPS because they were domiciled outside the district boundaries. (*Id.*) Accompanying the Preliminary Notice of Ineligibility was an explanation from the superintendent of the appeal process that Plaintiff could pursue if Plaintiff disagreed with the superintendent's determination of the children's ineligibility. (N.J. Def. Mot. to Dismiss at 6.) As the superintendent's communication set forth, Plaintiff could appeal the residency determination of the superintendent multiple times, first to the district board of education, then to the Commissioner of Education, and finally to the Appellate Division of the New Jersey state courts. (*Id.* 6-7.) The superintendent made clear to Plaintiff that during the appeal process the two children could not be removed from GCPS, pursuant to New Jersey state law. *See* N.J. Stat. Ann. § 18A:38-1; N.J. Admin. Code § 6A:22-4.2.

Advised of the protections and appeals process set forth under New Jersey state law, on December 17, 2017 Plaintiff requested a hearing before the district board of education, thus preventing GCPS from preemptively disenrolling the students. (N.J. Def. Mot. to Dismiss at 7.) Plaintiff's Complaint does not indicate the status of this pending appeal. That same day, Plaintiff filed another Motion for a Temporary Restraining Order (Doc. No. 13) to enjoin GCPS from

3

removing R.M. and A.W. from GCPS. (*Id.*) This Court heard arguments and denied Plaintiff's Motion on December 21, 2017. (Doc. No. 18.)

On December 18, 2017 Plaintiff filed new requests for emergent relief with OSEP, which were subsequently transmitted to the NJOAL. (N.J. Def. Mot. to Dismiss at 7.) The administrative law judge denied emergent relief due to the lack of an imminent harm. (*Id.* at 8.)

Plaintiff then filed an Amended Complaint (Doc. No. 20) with this Court alleging that New Jersey Defendants and GCPS violated IDEA, the Fostering Connections Act (42 U.S.C. §§ 670-75),[1] the Rehabilitation Act (29 U.S.C. § 794), and the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101 *et. seq.*). (Compl. at 2.) Plaintiff is seeking an order enjoining New Jersey Defendants and GCPS from disenrolling or removing R.M. and A.W. from GCPS and from further "discriminatory behavior towards Plaintiffs." (*Id.* at 31-32.) Motions to Dismiss were filed by New Jersey Defendants, collectively (Doc. No. 27), and GCPS. (Doc. No. 29.)

## II. STANDARD

Federal courts are limited in power to deciding only "Cases" or "Controversies" arising under the Constitution or laws passed under the authority of the Constitution. U.S. Const. art. III, § 2. This limitation is fundamental to America's system of separated powers. "Without a case-or-controversy requirement, the judicial power would 'extend[] to every question under the constitution,' and 'the other departments would be swallowed up by the judiciary.'" *Toll Bros., Inc. v. Twp. Of Readington*, 555 F.3d 131, 137 (3d Cir. 2009) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). Standing to sue is an aspect of the case-or-controversy

---

[1] It is not clear what provision of the Fostering Connections Act Plaintiff is relying on in bringing suit. Furthermore, whether a private cause of action even exists under the specific provisions of the Fostering Connections Act that Plaintiff is relying on is equally unclear.

requirement. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) (citing *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 663-664 (1993)). Article III standing is essential to federal subject-matter jurisdiction and must therefore be addressed first, before turning to the individual claims in a case. *Hartig Drug Company Inc. v. Senju Pharmaceutical Co. LTD.*, 836 F.3d 261, 269 (3d Cir. 2016).

The Supreme Court has established a three-pronged approach for determining whether a party bringing suit has standing. "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* (internal citations and quotations omitted). Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561. (internal citations and quotations omitted). *See also Monsanto Co. v. Geertson Seed Farm*, 561 U.S. 139, 149 (2010) ("Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.") The party seeking to invoke federal jurisdiction bears the burden of establishing these three elements. *Id.*

If the court determines at any time that it lacks subject-matter jurisdiction it must dismiss the pending action. Fed. R. Civ. Pro. 12(h)(3).

**III.     DISCUSSION**

Plaintiff has failed to demonstrate that she faces any "concrete and particularized . . . and actual or imminent," as opposed to purely "conjectural or hypothetical," harm. Plaintiff is asking this Court to interfere with a currently pending state administrative process in order to prevent the potential, yet entirely speculative, future harm of R.M. and A.W. being forced to move school districts. For such a harm to actually occur, Plaintiff is asking this Court to assume that (1) the district board of education affirm GCPS's finding regarding the students' district of residence, (2) that on appeal, the Commissioner of Education *and* the state court Appellate Division affirm GCPS's finding and that of the district board of education, and (3) that when R.M. and A.W. are disenrolled from GCPS and enrolled in a different district, that the new district will fail to provide the necessary materials to compensate for their learning disabilities. At this point in time administrative proceedings are properly taking place through the system set up under New Jersey law. Plaintiff's claims that these potential outcomes will materialize is pure speculation and far from a concrete and imminent harm.

Even supposing that the administrative appeals process results in a ruling that affirms the finding of ineligibility of residency made by GCPS, thereby requiring R.M. and A.W. to enroll in a different school district, there is no factual support for Plaintiff's contention that the new district will fail to meet the children's learning needs, thus resulting in a concrete harm. The drafters of IDEA contemplated the possibility of a child with disabilities moving school districts and appropriately provided that:

> In the case of a child with a disability who transfers school districts within the same academic year, who enrolls in a new school, and who had an IEP that was in effect in the same State, the local educational agency shall provide such child with a free appropriate public education, including services comparable to those described in the previously held IEP, in consultation with the parents until such time as the local educational agency adopts the previously held IEP

> or develops, adopts, and implements a new IEP that is consistent
> with Federal and State law.

20 U.S.C. § 1414(d)(2)(C)(i)(I). Thus, there is no basis for concluding that R.M. and A.W. will suffer any harm as a result of a potential (and at this point entirely speculative and hypothetical) ruling against them during the state administrative proceedings. Additionally, Plaintiff's contention that the children will suffer a form of emotional harm simply as a result of having to move schools, regardless of whether the new district can support the children's unique educational needs, is equally speculative. At this point there is simply no way of knowing whether the children would actually suffer emotionally from transferring districts, and as such, there is presently no concrete harm.

Plaintiff herself even admits that the harms are not concrete or imminent in her Opposition to GCPS's Motion to Dismiss. (Doc. No. 28.) In defending the need for this Court to enjoin GCPS from any further action, Plaintiff noted that someday soon the harm facing Plaintiff "will change from potential to immediate." By her own admission Plaintiff fails to meet the standing requirement for subject matter jurisdiction, as she does not face an imminent, nor immediate, harm.

Plaintiff also seems to assert a claim that she has already suffered a harm, or that she will suffer an imminent future harm, in relation to the "substantial resources and money" expended on this case. (Pl. Opp. to N.J. Def. Mot. to Dismiss at 21.) This Court notes, however, that imminent harms do not include the entirely optional choice of hiring an attorney. One cannot simply create a "concrete and particularized . . . actual or imminent" harm by their voluntary action of hiring counsel—to allow as much would be to open the floodgates and drown the courts in myriad lawsuits, none of which would otherwise be allowed to proceed due to lack of standing.

The purpose behind the important limitation on Article III courts' power to decide only concrete and particularized cases and controversies with imminent and actual harms is twofold:

first, to "prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies" and secondly, "to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). Plaintiff, in seeking an order enjoining GCPS and the New Jersey Defendants, is asking this Court to ignore the very principles that undergird its purposefully limited jurisdiction.

## IV.     CONCLUSION

For the reasons set forth above, Plaintiff has failed to show that she has adequate standing to bring a claim, and as such, she has failed to establish that this Court has jurisdiction. Therefore, New Jersey Defendants' and GCPS's Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(1) are **GRANTED**, and Plaintiff's Complaint is dismissed with prejudice. An appropriate order shall follow.


Dated: 06/25/2018                                                            /s Robert B. Kugler
                                                                                         ROBERT B. KUGLER
                                                                                         United States District Judge