**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

CAMDEN VICINAGE

| | | |
|---|---|---|
| K.K-M, | : | |
| Plaintiff, | : | Civil No. 17-11579 (RBK/KMW) |
| v. | : | **OPINION** |
| NEW JERSEY DEPARTMENT OF EDUCATION, et al., | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

Presently before the Court is Plaintiff K.K-M's Motion to Amend the Complaint. (Doc. No. 67). Defendant Gloucester City Public Schools ("GCPS"), New Jersey Department of Education, New Jersey Office of Administrative Law, and Dominic Rota (collectively "New Jersey Defendants') oppose Plaintiff's motion. For the reasons set forth below, Plaintiff's Motion is **GRANTED**.

## I. BACKGROUND

The procedural history of this case and the underlying administrative proceedings are a series of interlocking and continuous de facto and de jure appeals. Because this history is important to resolution of the current motion and any future motions, it is described below.

1

### a. Factual Background

In 2012, R.M. and A.W., moved with their biological parents to Gloucester City, New Jersey where they enrolled in Gloucester City Public Schools ("GCPS"). (Doc. No. 20, First Am. Compl. at ¶¶ 13, 15). After several tumultuous years with their birth parents, R.M. and A.W. were placed with K.K-M in September 2015. (*Id.* at ¶ 21). They have remained there ever since. (*Id.*). Plaintiff K.K-M was granted Kinship Legal Guardship ("KLG") status over the two children on May 16, 2017. (*Id.* at ¶ 22). KLG status grants Plaintiff the "same rights, responsibilities, and authority relating to [the children] as a birth parent." (*Id.* at ¶ 23). Among the rights, responsibilities, and authority granted to Plaintiff as the children's KLG is the "right to arrange and consent to educational plans for the child[ren]." (*Id.* at ¶ 24). However, the appointment of a KLG does not terminate the parental rights of A.W. and R.M.'s biological mother. (*Id.* at ¶¶ 25, 27). Plaintiff, unlike R.M. and A.W.'s birth parents, resides in Laurel Springs, New Jersey, which falls outside of GCPS's district boundaries. (*Id.* at Exhibit K).

R.M. and A.W. each have a disability that qualifies them for special education and related services under the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. §§1400 *et seq*. (*Id.* at ¶ 17). Since moving to GCPS in 2012, R.M. and A.W. each have had an Individualized Educational Program ("IEP") drafted pursuant to IDEA, designed to accommodate their respective disabilities and provide the proper educational supplements to ensure they receive the same quality of education as a non-disabled child. (*Id.*).

On October 24, 2017, Plaintiff received an email from the superintendent of GCPS informing Plaintiff that the two children should enroll in the Laurel Springs School District, where they resided. (*Id.* at ¶¶ 33–34). The superintendent recommended the transition from GCPS to the Laurel Springs School District occur at the end of the marking period. (*Id.*). In

response to this email notice, Plaintiff filed Requests for Due Process Hearings and Emergent Relief from the NJDOE Office of Special Education Policy ("OSEP") on November 12, 2017. (*Id.* at ¶ 35). In her petition for a Due Process hearing, Plaintiff alleged GCPS violated the IDEA and denied A.W. and R.M. a FAPE by changing their educational placement in contravention of various procedural safeguards and by failing to include transportation in A.W.'s IEP. (Doc. No. 20, Exhibit H). She also alleged violations of §504 of the Rehabilitation Act, the American with Disabilities Act, the New Jersey Law Against Discrimination, and the Every Student Succeeds Act. (*Id.*). These initial filings were rejected by Ms. Rota—a docket clerk for OSEP—on November 13, 2017, for failing to meet the substantive requirements of N.J.A.C. 6A:14. (*Id.* at ¶ 36).

On November 14, 2017, Plaintiff responded by filing a Complaint and a Motion for Temporary Restraining Order before this Court seeking to enjoin the New Jersey Department of Education, New Jersey Office of Administrative Law, and Dominic Rota (collectively "New Jersey Defendants') from asserting or adjudicating a sufficiency challenge to Plaintiff's due process complaint, and enjoining GCPS from disenrolling, transferring or removing R.M. or A.W. until the resolution of the due process complaints. (Doc. No. 19). This Court heard arguments and denied the request for a TRO on November 16, 2017. (Doc. No. 12).

Plaintiff subsequently amended her Due Process Requests ("Due Process Case 1") and submitted a second set, this time in compliance with the statutory requirements on November 19, 2017. (Doc. No. 20, First Am. Compl. at ¶ 37). The substance of the allegations in this amended due process petition changed. Plaintiff alleged GCPS violated the IDEA and denied A.W. and R.M. a FAPE by: (1) advising K.K-M that she did not have authority to make education decisions for A.W. and R.M.; (2) failing to re-evaluate A.W. and R.M. for a period of more than

3

three years; (3) denying A.W.'s rights to accommodations for after school activities; and (4) failing to include transportation in A.W. or R.M.'s IEP. (Doc. No. 20, Exhibit J). Plaintiff also alleged that R.M. had been the subject of repeated bullying and despite GCPS's investigation and finding no evidence of such harassment, R.M. continues to experience such bullying. (*Id.*).

On December 13, 2017, as part of the administrative process for Due Process Case 1, GCPS and Plaintiff participated in a mediation session. (*Id.* at ¶ 38). No agreement was formed, and the session terminated unsuccessfully. (*Id.*). That same day, the superintendent of GCPS sent Plaintiff a Preliminary Notice of Ineligibility, which notified Plaintiff that R.M. and A.W. failed to meet the eligibility requirements for attendance in GCPS because they were domiciled outside the district boundaries. (Doc. No. 1, Compl. at Exhibit K). This meant GCPS had initiated residency proceedings pursuant to N.J.S.A.18A:38-1(b)(2). (Doc. No. 38, Thurston Declaration at ¶ 8). Accompanying the Preliminary Notice of Ineligibility, and as set forth in N.J.S.A.18A:38-1, was an explanation of the appeal process that Plaintiff could pursue if Plaintiff disagreed with the superintendent's determination of the children's ineligibility. (*Id.*). As the superintendent's communication set forth, Plaintiff could appeal the residency determination of the superintendent multiple times, first to the district board of education, then to the Commissioner of Education, and finally to the Appellate Division of the New Jersey state courts. (*Id.*). The superintendent made clear to Plaintiff that during the appeal process the two children could not be removed from GCPS, pursuant to New Jersey state law. (*Id.*).

Advised of the protections and appeals process set forth under NJ state law, on December 17, 2017, Plaintiff requested a hearing before the district board of education, thus preventing GCPS from preemptively disenrolling the students. (Doc. No. 29, N.J. Def. Mot. to Dismiss at 7). For simplicity sake, this will be referred to as "Appeal of Residency Proceedings." That same

day, Plaintiff filed another Motion for a Temporary Restraining Order in this Court seeking to enjoin GCPS from removing R.M. and A.W. from GCPS. (Doc. No. 13). Only a day later, on December 18, 2017, Plaintiff filed new requests for Emergent Relief with OSEP, which were subsequently transmitted to the NJOAL. (Doc. No. 29, N.J. Def. Mot. to Dismiss at 7).

This Court heard arguments on Plaintiff's second motion for a temporary restraining order on December 21, 2017 and denied the motion. (Doc. No. 18). This denial of motions continued Administrative Law Judge Laura Sanders issued a decision the very next day on December 22 denying Plaintiff's request for emergent relief. (Doc. No. 29, N.J. Def. Mot. to Dismiss at 8).

In response to this consecutive denial of motions, Plaintiff filed an Amended Complaint (Doc. No. 20) with this Court on January 2, 2018, alleging the New Jersey Defendants and GCPS violated the IDEA, the Fostering Connections Act (42 U.S.C. §§ 670-75), the Rehabilitation Act (29 U.S.C. § 794), and the American with Disabilities Act (42 U.S.C. § 12101 *et. seq.*). (Doc. No. 20, First Am. Compl. at ¶¶ 42–112). Plaintiff sought an order enjoining New Jersey Defendants and GCPS from disenrolling or removing R.M. and A.W. from GCPS and from further "discriminatory behavior toward Plaintiffs." (Doc. No. 20, First Am. Compl. at ¶¶ 119(A), (E)).

The District Board of Education held a hearing on Plaintiff's appeal of the residency proceedings on January 9, 2018. (Doc. No. 38, Exhibit C). It determined that A.W. and R.M. were not entitled to receive a free and appropriate public education in the district because K.K-M resided outside the district, meaning the children's domicile was likewise outside the district. (Doc. No. 51, Exhibit 1). Plaintiff appealed this decision which was subsequently transmitted to

the Office of Administrative Law. (Doc. No. 38, Thurston Declaration at ¶ 9). In March of 2018, both Defendants moved to dismiss Plaintiff's amended complaint. (Doc. No. 27, 29).

### b. District Court Opinion

This Court granted the New Jersey Defendants' and GCPS's Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(1) and dismissed Plaintiff's Complaint with prejudice on June 25, 2018. (Doc. No. 33). In so ruling, we concluded Plaintiff failed to establish standing because she could not demonstrate R.M. and A.W. faced any "concrete and particularized . . . and actual or imminent," as opposed to purely "conjectural or hypothetical," harm. (*Id.*). The alleged harm to R.M. and A.W. that would occur by being forced to move school districts was premised on a series of speculative assumptions. (*Id.*). Specifically for the alleged harm to occur: (1) the district board of education had to affirm the GCPS's finding regarding the students' district of residence, (2) on appeal, the Commissioner of Education and the state court Appellate Division had to affirm GCPS's finding and that of the district board of education, and (3) when R.M and A.W. were disenrolled from GCPS and enrolled in a different district, the new district would have to fail to provide the necessary materials to compensate for their learning disabilities. (*Id.*). This standing deficiency was caused, in part, by the fact that at the time Defendants moved to dismiss Plaintiff's amended complaint, administrative proceedings were taking place to resolve the residency issue. (*Id.*).

Likewise, Plaintiff's complaint was devoid of any factual support for the claim that a new district will fail to meet the children's learning needs and we explained that it was equally speculative, given the children had not moved to the new school district yet, that they would suffer some sort of emotional harm from the move. (*Id.*). Lastly, Plaintiff's allegation that "substantial resources and money" were expended on this case was insufficient to establish standing. (*Id.*).

Such a self-induced choice to hire counsel cannot be used to manufacture the "concrete and particularized . . . actual or imminent" harm necessary for standing. (*Id.*). Accordingly, we dismissed Plaintiff's complaint with prejudice under Rule 12(b)(1) for lack of subject matter jurisdiction. (*Id.*).

### c. Procedural History Between Appeal and Third Circuit's Decision

On July 10, 2018, Plaintiff filed a notice of appeal challenging this Court's decision dismissing the amended complaint. (Doc. No. 35). While this appeal was pending, Plaintiff's Appeal of the Residency Proceedings—not Plaintiff's Due Process Case 1, which was still pending—came to a head on August 28, 2018. (Doc. No. 38, Thurston Decl., ¶10). The administrative law judge granted GCPS's motion for a summary decision because after K.K-M became A.W. and R.M.'s KLG, their school district changed thereby relieving GCPS of the obligation to provide a FAPE. (*Id.* at Exhibit C). Plaintiff appealed this residency decision to the New Jersey Commissioner of Education. (*Id.* at Thurston Decl., ¶12). The Commissioner of Education adopted the ALJ's residency decision on October 4, 2018. (*Id.* at ¶13).

In response to these decisions, on October 9, 2018, GCPS initiated the disenrollment process of A.W. and R.M. (*Id.* at ¶14). That same day, Plaintiff filed new two emergent relief applications in the New Jersey Office of Administrative Law seeking to prevent the disenrollment process. (Doc. No. 42. Statement). Administrative Law Judge Lisa James-Beavers was assigned to hear those emergent matters. (*Id.*). The following day, on October 10, 2018, Plaintiff also filed a motion for a preliminary injunction pending appeal in the Third Circuit seeking to prevent GCPS from disenrolling A.W. and R.M. from the school. (Doc. No. 38, Thurston Decl., at ¶15). The very next day, the Third Circuit temporarily enjoined GCPS from disenrolling A.W. and R.M. from the school until it could consider Plaintiff's motion for a preliminary injunction. (Doc. No. 37). During

7

a telephone conference on October 12, 2018, ALJ Beavers the parties that she would reserve her ruling on the emergent relief applications until the Third Circuit decided Plaintiff's request for an injunction pending appeal. (Doc. No. 42, Statement at ¶4).

Between the filing of the request for a preliminary injunction pending appeal, and the Third Circuit's decision on that motion, on November 27, 2018, Plaintiff appealed the NJ Commissioner of Education's decision to the New Jersey Appellate Division. (Doc. No. 51, at Exhibit 1). Six months later, on April 18, 2019, the Third Circuit denied Plaintiff's motion for an injunction pending appeal, reasoning that she had to make such a motion with the District Court in the first instance. (Doc. No. 38, Thurston Decl., ¶17).

Undaunted by the Third Circuit's denial, Plaintiff filed her third request for a preliminary injunction in this Court on April 18 seeking to prevent the disenrollment of A.W. and R.M. from GCPS. (Doc. No. 38). At the time Plaintiff filed her request for a preliminary injunction with this Court, ALJ Beavers had not issued a decision on the new emergent relief applications. (Doc. No. 42). Consequently, this Court deferred ruling on Plaintiff's motion for a preliminary injunction until ALJ Beavers ruled. (Doc. No, 48 at ¶ 3). On May 9, 2019, ALJ Beavers issued an Order denying Plaintiff's emergent relief requests. (Doc. No. 50).

Before this Court ruled on Plaintiff's request for a preliminary injunction, Plaintiff filed a second due process complaint ("Due Process Case 2") against GCPS for the 2018-2019 school years on May 30, 2019. (Doc. No. 67, Brief, Exhibit A at ¶ 82). Plaintiff alleged GCPS failed to prepare a new IEP for that year; blocked adequate parental participation by K.K-M. in the development of a new IEP; failed to convene an IEP meeting; failed to fully implement that 2017 'stay put' IEP. (*Id.*). On July 1, 2019, this due process complaint was transmitted to the Office of

Administrative Law and assigned to ALJ Lieberman. (*Id.* at ¶ 84). That same day, this Court denied Plaintiff's request for a preliminary injunction. (Doc. No. 54).

Again, Plaintiff appealed this Court's decision denying the preliminary injunction to the Third Circuit, this time in the form of an interlocutory appeal. (Doc. No. 55). Fifteen days after we denied Plaintiff's motion for a preliminary injunction, Plaintiff filed a motion for reconsideration on July 21, 2019, requesting this Court to re-examine our order denying the injunction. (Doc. No. 58). Before we ruled on Plaintiff's motion for reconsideration, the New Jersey Appellate Division issued a decision on Plaintiff's Appeal of the Residency Determination denying the motion for stay of enforcement pending appeal. (Doc. No. 62). On August 27, 2019, this Court denied Plaintiff's motion for reconsideration. (Doc. No. 63).

It was not until March 9 and 16, 2020 that final decisions were rendered in Plaintiff's Due Process Case 2 and Due Process Case 1, respectively. (Doc. No. 67, Brief, Exhibit A at ¶¶ 104, 81). Both decisions were rendered in favor of GCPS. (*Id.*).

### d. Appeal

On May 15, 2020, the Third Circuit issue a decision on Plaintiff's appeal of the order dismissing her amended complaint for lack of standing but dismissed her other appeals as moot. (Doc. No. 65). The Third Circuit vacated this Court's judgment and remanded the case to the District Court to dismiss without prejudice. (*Id.*). It agreed with this Court's reasoning that standing was not satisfied but explained we were required to dismiss the case without prejudice as we could not adjudicate the merits of the case. (*Id.*).

It went on to note that K.K.-M had alleged factual developments since the commencement of the litigation that were potentially relevant to a new standing inquiry. (*Id.*).

But because it could not render a decision in this case due to its lack of jurisdiction, the proper forum to raise these issues would be in a new complaint. (*Id.*).

### e. Current Dispute

On remand, we dismissed Plaintiff's complaint without prejudice. (Doc. No. 66). Subsequently, Plaintiff filed a motion for leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) seeking to add the appeals of Due Process Case 1 and 2 and Black Horse Pike Regional School District ("BHPRSD") as a necessary party. (Doc. No. 67). The New Jersey Defendants and GCPS's oppose this motion.

## II. LEGAL STANDARD

### a. Federal Rule of Civil Procedure 15

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely grant leave when justice so requires." Fed.R.Civ.P. 15(a)(2). Motions to amend pleadings should be liberally granted and "leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir.2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Arthur*, 434 F.3d at 204; *see also Foman*, 371 U.S. at 182 ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given'.").

Futility means that the complaint, as amended, would fail to cure a deficiency in the original complaint or fail to state a claim upon which relief could be granted. *Jablonski v. Pan American World Airways*, Inc., 863 F.2d 289, 292 (3rd Cir.1988). In assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Thus, "the trial court may properly deny leave to amend when the amendment would not withstand a motion to dismiss." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983).

### b. Local Civil Rule 15.1(a)

Local Civil Rule 15.1(a) provides "a party who seeks leave to amend a pleading shall do so by motion, which shall state whether such motion is opposed, and shall attach to the motion: (1) a copy of the proposed amended pleading; and (2) a form of the amended pleading that shall indicate in what respects it differs from the pleading which it proposes to amend, by bracketing or striking through materials to be deleted and underlining material to be added." L. Civ. R. 15.1(a).

## III. DISCUSSION

The heart of this dispute is whether Plaintiff is required to file a new complaint, creating a new case and docket number, or whether Plaintiff can amend the original complaint to include new legal theories premised on new facts.

Plaintiff seeks leave to amend the Complaint to add two appeals which were fully litigated and decided on March 9 and 16, 2020, and to add BHPRSD as a necessary party. Plaintiff contends that leave should be granted because there is no dilatory motive or undue prejudice to Defendants, and the deficiencies noted by the Third Circuit have been cured. Plaintiff notes that Defendants did not respond to her request to amend the complaint.

GCPS and the New Jersey Defendant's both oppose Plaintiffs' Motion to Amend the complaint. Defendant GCPS argues Plaintiffs' Motion to Amend should be denied because she failed to include a copy of the proposed amendment as is required by Local Civil Rule 15.1(a). It further argues that in light of the Third Circuit's opinion, the proper remedy is to file a new Complaint, rather than amend the original, and as such, Plaintiff's Motion to Amend should be denied as futile.

The New Jersey Defendants argument largely mirrors GCPS's. It sets forth the same procedural infirmity that GCPS noted and argues Plaintiff should be required to file a new complaint, rather than amend the original. Differently from GCPS, however, the New Jersey Defendants argue Plaintiff's complaint is futile under *Foman* because it adds new causes of actions premised on new facts and the same deficiencies that were in the original complaint pervade the proposed one.

### a. Procedural Infirmity

We will quickly dispense with the Defendants' procedural arguments. Initially, Plaintiff did not comply with Local Civil Rule 15.1(a)(2) because she did not attach a proposed amended complaint which set forth in what respects it differed from the complaint it was amending. However, after Defendants pointed out this procedural flaw, Plaintiff attached a proposed amended complaint that complied with Local Civil Rule 15.1(a)(2). As such, Defendants' procedural arguments are now moot.

However, Local Civil Rule 15.1(a)(2) is not simply a nicety that can be disregarded by parties at a whim. *See A.B. v. Vineland Bd. of Educ.*, No. 17-cv-11509, 2019 WL 2354609, at *5 (D.N.J. June 4, 2019) (dismissing claim because plaintiff "did not properly indicate how the Amended Complaint differs from her original one" as required by Local Civil Rule 15.1). It

12

serves an important purpose. Delineating the differences between the original and amended pleading simplifies the Court's task in assessing the proposed Amended Complaint and allows meritorious claims to move forward more expeditiously. Accordingly, all parties must scrupulously comply with the Local Rules in all filings.

### b. Plaintiff's Motion for Leave to Amend the Complaint is Granted

Per the plain text of the rule, leave to amend shall be freely given to Plaintiff. Her motion for leave to amend the complaint comes seven days after the Third Circuit's opinion and mandate that the case be dismissed without prejudice. The swiftness in which she sought leave to amend does not suggest a dilatory motive or bad faith. There is no indication that Plaintiff's motion was made to delay proceedings or that there was some duplicitous motive for not amending the complaint earlier. In fact, Defendants do not even argue this in their opposition briefs.

Nor do Defendants argue undue delay and we do not find any either. Plaintiff could not have included the substantive and procedural violations of IDEA in the first amended complaint as she was required to exhaust her administrative remedies first. It was not until a final decision was reached in Due Process Case 1 and 2 that Plaintiff could appeal these decisions to the District Court. Thus, including her substantive and procedural violations of IDEA in the first amended complaint would have been futile. *M.M. v. Paterson Bd. of Educ.*, 736 F. App'x 317, 319 (3d Cir. 2018) (affirming the district court's dismissal of an IDEA claim due to plaintiff's failure to exhaust administrative remedies). Simply put, there is ample reason why these alleged violations were not included in the first amended complaint.

The three arguments Defendants' make in opposition to Plaintiff's motion for leave to amend are unpersuasive. Since both Defendants cite to *Foman v. Davis* as establishing that Plaintiff's proposed amended complaint is futile, we will address this issue first.

*Foman* does not stand for the proposition Defendants' think it does. In that case, the petitioner filed a complaint alleging that in exchange for her promise to care for and support her mother, petitioner's father promised not to make a will thereby assuring petitioner of an interstate share of his estate. *Foman v. Davis*, 371 U.S. 178, 179 (1962). Contrary to this agreement, the father devised his property to his second wife. *Id.* The petitioner sought recovery of what she was promised—an intestate share of her father's estate—but the District Court dismissed the complaint on the ground that the oral agreement was unenforceable under the applicable statute of frauds. *Id.* Petitioner filed a motion to vacate the judgment and to amend the complaint to assert a right of recovery in quantum meruit. *Id.* The District Court denied both motions and the Court of Appeals affirmed. *Id.* at 180. The Supreme Court concluded the Court of Appeals erred when it affirmed the District Court's denial of the motion to vacate the judgment in order to amend the complaint. *Id.* at 182. In other words, the Supreme Court concluded the Court of Appeals should have reversed the District Court's denial of the motion to amend, and the amendment should have been allowed because it would have done no more than state an alternative theory for recovery. *Id.*

Somehow Defendants glean from *Foman* that if an amendment does more than state an alternative theory of recovery, it is futile. But futility is implicated when the amendment fails to cure a deficiency in the original complaint or fails to state a claim on which relief can be granted. *Jablonski v. Pan American World Airways*, Inc., 863 F.2d 289, 292 (3rd Cir.1988). It is not implicated when new causes of action are raised, and new facts are injected into the pleadings. If anything, new causes of action and new facts are usually an indication of undue prejudice. However, Defendants do not allude to undue prejudice nor is it present here.

The cases that have cited *Foman* for the proposition that an amended complaint raising new causes of action on new facts is unduly prejudicial to defendants have rejected the amendment

14

when it is requested at or near trial or just days before a hearing. *Suehle v. Markem Mach. Co.*, 38 F.R.D. 69, 70, 72 (E.D. Pa. 1965) (denying Plaintiff's motion for leave to amend the complaint, which was based on new claim and a different set of operative facts, when the case was ready for pre-trial conference and shortly thereafter would be listed and called for trial); *Panetta v. SAP Am., Inc.*, 294 F. App'x 715, 717 (3d Cir. 2008) (concluding the district court did not abuse its discretion in denying the plaintiff's motion for leave to amend the complaint because plaintiff sought to do so after the close of discovery); *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 826 (3d Cir. 1978) (holding the Occupational Safety and Health Review Commission abused its discretion in allowing the Secretary of Labor to amend its complaint just days before a hearing when the amended complaint changed the legal and factual basis of the claim). Plaintiff's complaint was dismissed at the motion to dismiss stage and will return to this procedural posture upon amendment. Although there is no discovery process like a typical suit, Defendants have not pointed to any last-minute hearings where they will be prejudiced by such an amendment. Because Defendants have not even raised the specter of undue prejudice in their opposition briefs, we find Plaintiff's proposed amendment does not unduly prejudice Defendants.

Defendants reliance on *Foman* for the proposition that Plaintiff's proposed amendment is futile suggests that *Foman* establishes the ceiling. But *Foman*, at most, establishes that an amendment stating an alternative theory of recovery is one of many permissible ways a complaint can be altered. Here Plaintiff, unlike the petitioner in *Foman*, not only adds alternative theories of recovery but also injects "new" facts into the case. The facts are only "new," however, in the sense that they were not included in the first amended complaint. But they are not "new" to Defendants. The procedural history of this case makes this clear. Defendants have been aware of the factual allegations in Due Process Case 1 since November 19, 2017 and May 30, 2019 for Due Process

Case 2. Defendants have been dragged in and out of the state and federal courts for years as this case has made its way through the normal state administrative process, with intermittent motions for preliminary injunctions or temporary restraining orders filed in between. Defendant, then, should be intimately familiar with the claims and factual allegations. Indeed, Plaintiff even denotes which Due Process Case the claims originated from in the heading of each count. Thus, while this amendment is not a run of the mill alteration to fix purported deficiencies, we see no reason, and Defendants have not provided any, why Plaintiff should be precluded from amending the complaint.

Defendants' also assert that in light of the Third Circuit's opinion the proper course of action for Plaintiff is to file a new complaint creating a new case and separate docket number, not to amend the original. Defendants' cite to the Third Circuit's language "the *proper forum* to raise these issues would be in a *new complaint*" to show Plaintiff must file a new complaint creating a new docket number. In rebuttal, Plaintiff points to the footnote in the Third Circuit's opinion which states "Plaintiff is advised that in addition to demonstrating standing, *any future complaint* would also need to demonstrate that state administrative remedies were exhausted," as indicating that amendment is proper. While the Defendant's interpretation of the Third Circuit's opinion is possible, it seems too unduly rigid to be plausible. In fact, in the very case that Defendants' cite to support their argument the Supreme Court admonished that it is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." *Foman*, 371 U.S. at 182. The Defendants' approach would do just that—have this Court deny Plaintiff's motion for leave to amend on a mere technicality and an ambiguous one at that. Courts routinely treat the phrases "new complaint" and "amended complaint" as synonymous. *Hummel v. Prime Care*, No. CIV.A. 1:08-CV-1567, 2009 WL 813976, at *1 (M.D.

Pa. Mar. 27, 2009) (using the phrases "new complaint" and "amended complaint" interchangeably). Moreover, Defendants argument, which hinges on the mere technical distinction between a new and amended complaint, would unnecessarily prolong resolution of this case and cause Plaintiff to incur additional litigation costs.

Likewise, in *Kamal*, a case with similar procedural posture, after the Third Circuit vacated the District Court's order dismissing the case with prejudice and remanded for the "limited purpose" of dismissing the case without prejudice, the District Court allowed the Plaintiff to file a third amended complaint. *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 119 (3d Cir. 2019); *Kamal v. J. Crew Grp., Inc.*, 416 F. Supp. 3d 357, 360 (D.N.J. 2019). The District Court granted the amendment despite the Third Circuit's clear limiting language to the contrary. *Id.*; *see also Adams v. Gould Inc.*, 739 F.2d 858, 869 (3d Cir. 1984) (finding plaintiff's amendment adding a new legal theory to the complaint did not prejudice defendants in light of the procedural posture of the case because defendants had not litigated the facts of this case once as plaintiffs' legal theory was rejected in an interlocutory appeal). Thus, because of the current procedural posture of this case—at the motion to dismiss stage—and the Defendants' familiarity with factual allegations and claims, the technical distinction between a new complaint and an amended one will not preclude Plaintiff's motion for leave to amend.

Lastly, Defendants argue Plaintiff's complaint is futile because it fails to cure the same deficiencies as the original one. This Court disagrees. At the time that we dismissed Plaintiff's first amended complaint for lack of standing, her claims were based on several contingent and speculative assumptions. But the speculative nature of the harm alleged by Plaintiff is no longer an issue in this complaint. First, as pled, Plaintiff seems to have exhausted the administrative remedies available to her and thus the complaint is no longer deficient for want of standing. While

Plaintiff has not provided this Court with the administrative record as required by 20 U.S.C. § 1415(i)(2)(C)(i),[1] Defendants do not contend, and therefore this Court does not have any reason to believe, that Plaintiff failed to exhaust her administrative remedies. Second, Plaintiff's proposed Second Amended Complaint is premised on entirely new facts and asserts new causes of action. As such, it cannot be said that Plaintiff's proposed complaint fails to establish a concrete and particularized injury like the first one. Therefore, because the same deficiencies that pervaded the first complaint are not present, and Defendants have failed to articulate or identify any undue prejudice, bad faith, or dilatory motive, Plaintiff's motion will be granted.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Amend the Complaint is **GRANTED**. An appropriate order will follow.

Dated: 11/17/20                                                              s/ Robert B. Kugler
                                                                                                                      ROBERT B. KUGLER
                                                                                                                      United States District Judge

---

[1] 20 U.S.C. § 1415(i)(2)(C)(i) provides the reviewing court shall "receive the records of the administrative proceedings."